IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JANET STANFORD,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **4:08-cv-00441-UWC** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Janet Stanford ("Plaintiff") brings this action for disability insurance benefits pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").

The Court finds and concludes that the decision of the Administrative Law Judge ("ALJ"), which became the decision of the Commissioner, is not supported by substantial evidence. Therefore, the decision of the Commissioner is due to be reversed, and the case remanded with instructions that Plaintiff be granted benefits.

### I.  Procedural History

Plaintiff filed an application for disability insurance benefits and supplemental

1

security income on March 6, 2006, alleging disability beginning on May 9, 2003. (R. 11.)  These claims were initially denied on November 18, 2003. *Id.*  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on December 3, 2003. *Id.*  The Plaintiff appeared and testified at a hearing on November 9, 2005. *Id.*  The ALJ suspended the hearing to obtain additional evidence concerning Plaintiff's employment and regarding employment and neuropsychological and orthopedic consultative examinations.  *Id.*   After the ALJ received the supplemental evidence, which included the requested report from neuropsychologist Dr. Samuel E. Fleming, a supplemental hearing was held on September 7, 2006.  *Id.*

The ALJ denied benefits on October 30, 2006.  (R. 20.)

The Appeals Council declined review on February 4, 2008.  (R. 4.)

Having timely pursued and exhausted his administrative remedies, Plaintiff filed this action for judicial review pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), on March 11, 2008.

## II. Factual Background

Plaintiff alleges disability due to mental retardation, anxiety, headaches, carpal tunnel syndrome, panic disorder with agoraphobia, and injuries to her right shoulder, right wrist, and right hand.

The onset date of Plaintiff's disability is May 9, 2003. On that date, she injured

her right shoulder, right arm, and right hand while working at Wendy's. (R. 169.) She has not performed substantial gainful activity since that time.

Although Plaintiff last worked as a cashier from September 2004 to March 2005,[1] she has not performed substantial gainful activity since May 9, 2003.

Plaintiff has worked numerous jobs since high school, classified by the vocational expert ("VE") as light to medium in physical demands and unskilled.[2] (R. 520, 521.)

## A. Treatment History

At the behest of SSA,[3] Dr. Samuel E. Fleming, a clinical neuropsychologist, conducted a consultative examination of Plaintiff on January 1, 2006. (R. 280-82.) On the WAIS-III[4], Plaintiff generated an estimated full scale IQ of 63, which is in the mildly retarded range of intellectual abilities. (R. 281.) On the WRAT-III[5], Plaintiff generated standard scores of 61 in reading, 67 in spelling, and 65 in arithmetic. *Id.*

---

[1] The ALJ concluded that Plaintiff's work as a cashier from September 2004 through March 2005 was an unsuccessful attempt to work or did not constitute substantial gainful activity. (R. 13.)

[2] These include positions as a cook, cashier, janitor, bagger, dishwasher, and housekeeper. at such places as McDonalds, Jack's Family Restaurant, Best Western Hotel, a hosiery company, a school, and Wendy's. (R. 216.)

[3] *See,* R. 540.

[4] Wechsler Adult Intelligence Scale-Third Edition.

[5] Wide Range Achievement Test-Third Edition.

This translates into reading and spelling at the third grade level and performing arithmetic at the fourth grade level. *Id.* On the WMS[6], Plaintiff generated a memory quotient of 73, which is in the borderline range of intellectual abilities. (R. 282.) Specifically, she "was unable to perform serial three's and had difficulty with a logical memory task, as well as a visual reproduction task." *Id.* On the Trail Making Test, Plaintiff has "mild to moderate impairment of minimally complex problem solving skills, as well as attention and concentration." *Id.*

Dr. Fleming diagnosed Plaintiff with cognitive disorder, NOS, panic disorder with agoraphobia, mild mental retardation, carpal tunnel syndrome, bone spur, high pulse rate, chronic back pain, and a Global Assessment of Functioning (GAF) of 60. *Id.* Dr. Fleming concluded that Plaintiff

> would have difficulty understanding, carrying out, or remembering instructions. Interactions with coworkers and supervisors would be impaired given her problems with panic disorder. She does not seem emotionally or cognitively capable of coping with the demands of a normal work environment.

(R. 282.) Finally, Dr. Fleming recommended that Plaintiff receive outpatient treatment for panic disorder and be referred to a psychiatrist.

The SSA's Vocational Expert ("VE") opined that if Dr. Fleming's opinions are credible, Plaintiff is disabled. (R. 523.)

---

[6]Wechsler Memory Scale.

As to physical impairments, six different doctors diagnosed Plaintiff with right shoulder problems. Doctors Weatherly, Theakston, and Tyndall diagnosed Plaintiff with a sprained right shoulder. (R. 224, 332, 440, 459.) Plaintiff was diagnosed with a contusion of the right shoulder by Dr. Crystal (R. 433), mild tendinitis by Dr. McFarland (R. 252), and a dislocated right shoulder by Dr. Daugherty (R. 424).

Three different doctors diagnosed Plaintiff with right wrist problems. Dr. Graham diagnosed Plaintiff with a sprain. (R. 356.) Dr. Tyndall diagnosed Plaintiff with a sprain and limited range of motion. (R. 223-24.) Finally, Dr. McFarland diagnosed Plaintiff with pain in the right wrist. (R. 252.)

In addition to wrist and shoulder injuries, several doctors diagnosed Plaintiff with other physical problems. Dr. McFarland diagnosed Plaintiff with chronic neck pain, chronic back pain, and chronic headaches. (R. 252, 265, 323.) Dr. Palmer diagnosed her with acute myofascial strain of the cervical and right dorsal. (R. 255.) Dr. George S. Buckner, an SSA consultative orthopedist, diagnosed Plaintiff with cervical disc syndrome. (R. 274.)

Plaintiff has been prescribed several medications for severe pain. Five different physicians have prescribed Lortab and/or Demorol. (R. 290, 311, 433, 440, 453, 459, 500.) Flexeril, the muscle relaxer, and the anti-inflammatory drug Orudis have also been prescribed for her. (R. 250, 290.)

On occasion, Plaintiff did not have her prescriptions filled because she lacked the money to pay for them. (R. 252.)

### B. Plaintiff's Background

At the hearing before the ALJ, Plaintiff testified that her anxiety problems and pain on her right side caused her inability to work. (R. 507-08.) At times during the day, she has a choking sensation and can hardly breath.(*Id.*) When she worked, her anxiety problems caused her to miss many days from work. (R. 509.)

Plaintiff was in special education classes for the entire time she was in high school. (R. 503, 519, 532.) She had considerable difficulty in reading and math. (*Id.*) When she took tests for jobs, she would give wrong answers even when she had the answer book in front of her. (R. 510. She had difficulty in understanding and remembering instructions and customer orders when she was on the job. (R. 511, 518.) Although her husband has been trying to teach her to drive over the last five or six years, she cannot drive. (R. 511, 517.)

The VE testified that if Plaintiff's testimony is credited, she is disabled. (R. 523.)

### C. The ALJ's Decision

The ALJ found that the Plaintiff suffers from the severe impairments of cervical disc syndrome; anxiety; and mild mental retardation. (R. 14.) He further

found that Plaintiff did not satisfy the requirements of a Listing, and that Plaintiff did not allege that she satisfied one or more of the Listings. (*Id.*)

Remarkably, the ALJ discredited the opinions of the SSA's consultative neuro-psychologist Dr. Fleming on the ground that it was "inconsistent with, and unsupported by, the great weight of the evidence.[7] In the absence of supporting medical evidence, the ALJ found that Plaintiff "experiences no more than mild to moderate restrictions of activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace and episodes of decompensation." (R. 19.)

Finally, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (R. 15.)

### III. Controlling Legal Principles

The district court's scope of review is limited to determining whether substantial evidence supports the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as

---

[7]The "inconsistencies" relied on by the ALJ were 1) the lack of mental health treatment of Plaintiff, 2) Plaintiff has indicated on a questionnaire, employment application, and exit interview that she liked her co-workers, 3)that she did not repeat course work or a grade level in high school, and 4) that Plaintiff had steadily worked for a number of years after high school. (R. 18-19.)

adequate to support a conclusion." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth* v. *Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotation marks omitted).

Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)). "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### A. The Sequential Evaluation Process

There is a sequential evaluation of disability claims. 20 C.F.R. § 404.1520(a)(4) (1983). The first consideration is whether the claimant is working. *Id.* If the claimant is working, she is not disabled. *Id.* If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. *Id.* If the claimant does not suffer from a severe impairment, she is not disabled. *Id.* If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." *Id.*

§ 404.1520(a)(4). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the Commissioner "will find [the claimant] disabled without considering . . . age, education, and work experience." *Id.* § 404.1520(d).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant can perform despite his impairments. This evaluation must give consideration to the claimant's subjective complaints, nature of pain, medications, treatment, functional restrictions, claimant's daily activities, and other relevant factors. 20 C.F.R. § 404.1512.

### B. The Pain Standard

Pain alone can be disabling. When a disability claim is based solely on pain, a two-prong standard is utilized in assessing the credibility of her testimony. First, the claimant must establish evidence of an underlying impairment. When the underlying impairment is established, the claimant must then *either* adduce medical evidence to confirm the severity of the pain alleged, *or* prove that the impairment is of such severity that it can be reasonably expected to cause the pain alleged. *See, Landry v.*

*Heckler,* 782 F.2d 1551, 1553 (11th Cir.1986); *Marbury v. Sullivan,* 957 F.2d 837 (11th Cir.1992)

### C. Listing 12.05(C)

Listing 12.05(C) covers mental retardation claims. It provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . .
> .....
> .C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

When there is an IQ score of 70 or below, the ALJ is required to address the validity of an IQ score, and if the ALJ fails to do so her opinion is not supported by substantial evidence. *Thomas v. Barnhart,* 2004 WL 3366150, at *2-3 (11th Cir. 2004).

The second part of Listing 12.05(C) requires a determination of whether there is "a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

This part of the second element is satisfied when

> an impairment imposes significant limitations when its effect on a claimant's ability to 'perform basic work activities' is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in an of itself disabling, thus 'significant' requires something less than severe within the meaning of § 404.1520(c) of the Commissioner's Regulations.

*Vaughn v. Astrue,* 494 F. Supp. 2d 1269, 1272 (N.D. Ala. 2007) (quoting *Edwards by Edwards v. Heckler,* 755 F.2d 1513, 1515 (11th Cir. 1985)).

During this part of the analysis, the "regulations require the Secretary to consider the combined impact of a claimant's impairments." *Davis v. Shalala,* 985 F.2d 528, 532 (11th Cir. 1993).[8]

## IV. Analysis

The decision must be reversed for two separate and independent reasons:  1)

---

[8]In *Davis*, the Eleventh Circuit held that the Plaintiff's mild carpal syndrome and allergic rhinitis, which "would be no more than moderate in severity," were sufficient to meet the second part of 12.05(C).  985 F.2d at 534-35 (on appeal from an affirmation of denial of benefits, the Court reversed and granted benefits).

In *Edwards by Edwards*, the Eleventh Circuit held that the Plaintiff met the second part of 12.05(C) "because his "asthma and lung disease affect his ability to exert himself, [which has] more than a 'minimal effect' on his ability to perfect basic work activities."  755 F.2d at 1516. Also, the Court concluded that unremarkable x-rays and a pulmonary function study that showed a mild restriction did not disprove the findings.  *Id.*

In *Jones v. Astrue*, 494 F. Supp. 2d 1284 (N.D. Ala. 2007), the court found that a GAF of 50 satisfied the second part of 12.05(C).  *Id.* at 1288-89.

the ALJ's decision that Plaintiff does not satisfy a Listing is abundantly unsupported by substantial evidence and runs afoul of the applicable law: and 2) based on the ALJ's own findings, Plaintiff satisfied the pain standard.

### A. Plaintiff Easily Satisfies Listing 12.05(C)

As a preliminary matter, the ALJ was profoundly wrong in his assumption that Plaintiff was required to specifically allege disability under a Listing. Because Social Security proceedings are quintessentially inquisitorial rather than adversarial; the ALJ has an established duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981) ("ALJ has a basic obligation to develop a full and fair record [, which] exists even if the claimant is represented by counsel").

Indubitably, Plaintiff's IQ is 63 for purposes of Listing 12.05(C). The only psychologist who tested her reported this fact. Her mental retardation is consistent with the undisputed fact that she was placed in special education classes throughout her schooling; and that she has difficulty in reading, memorizing, and counting. In discrediting Dr. Fleming's test results, the ALJ impermissibly substituted his own

untutored psychological opinion.[9] This he could not do. *See Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1172-73 (N.D. Ala. 2006) In short, Plaintiff's valid IQ score is between 60 through 70.[10]

The ALJ's findings compel the conclusion that Plaintiff has several severe physical impairments significantly affecting her ability to work.[11]

Moreover, Plaintiff has a GAF of 60, which indicates: "[m]oderate symptoms (e.g., flat affect and circumstantial, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th Edition).

Under all the facts in the record, Plaintiff's satisfaction of Listing 12.05(C)'s

---

[9]The ALJ's improperly relied on Plaintiff's statements about her ability to get along with others, the fact that she may not have repeat special education courses (the ALJ had no evidence on which to base this conjecture), and that she was gainfully employed for several years. These considerations do not compromise the IQ scores made by Plaintiff on the WAIS-III tests administered by Dr. Fleming.

[10]The ALJ's improperly found that because Plaintiff's WMS was 73, she does not meet the requirement. Under SSA regulations, "where more than one IQ is customarily derived from the test administered, e.g. where verbal, performance, and full scale IQs are provided in the Weschler series, we use the lowest of these in conjunction with 12.05." *Id.* § 12.00(D)(6)(c); *Thomas*, 2004 WL 3366150, at *2.

[11]Though several x-rays appear to reflect no abnormality in Plaintiff's wrist and shoulder, multiple doctors have diagnosed these problems and prescribed severe pain medications for them. *See Edwards by Edwards,* 755 F.2d at 1516.

13

is scarcely debatable.[12]

### B. Based on the ALJ's Findings, Plaintiff Satisfies the Pain Standard

---

[12]The Commissioner argues that Plaintiff was also required to prove three factors in addition to IQ and significant work-related limitations. These factors, the SSA argues, are contained in the opening paragraph of 12.05 and are: (1) have significantly subaverage general intellectual function; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22. (Def.'s Mem. Supp. Comm.'s Dec. 12) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

The Commissioner has taken the quotation from *Crayton* out of context. In *Crayton*, the paragraph following that mentioning the three factors reads:

> [g]enerally, the claimant meets the criteria for presumptive disability under section . . . 12.05(C) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work."

120 F.3d at 1219-20.

The Commissioner also cites *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992), to support its argument for these factors, but *Lowery* contains the same description of 12.05(C) as *Crayton*. *Id.*

In addition, the very language of 12.05 is itself contrary to the SSA's argument. Listing 12.05 is unequivocal: "[t]he required level of severity for this disorder *is met* when the requirements in A, B, C, or D are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).

Lastly, alleged factor three has no moment because a person is presumed to have a fairly constant IQ throughout life. *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001).

It is correct, as the SSA states, that "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837. However, as discussed above, nowhere in *Lowery* does the Court state there are other factors always applied to an IQ score of 60 to 70. What *Lowery* does say is that an IQ score is valid *unless* sufficient evidence disproves the score. *Id.* Here, there is no such evidence.

14

The ALJ found that Plaintiff suffers from the severe underlying impairment of cervical disc syndrome. The ALJ noted that various physicians have diagnosed and treated her for acute and chronic neck pain, right shoulder pain, and right wrist and arm pain. (R. 15, 16.) The first prong of the test is established by the ALJ's founding.

Likewise, the second prong of the pain standard is established by the ALJ's finding: "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms." (R. 15.) Alternatively, the severe pain medications which have been prescribed for Plaintiff is objective medical evidence which confirm the severity of her pain.

On these findings, if he had followed the law, the ALJ would have been compelled to conclude that Plaintiff satisfies the pain standard and is accordingly disabled.

## VI. Conclusion

Because the decision denying benefits is unsupported by substantial evidence and conflicts with the applicable law, it will be reversed and the appropriate relief granted by separate order.

_____
U.W. Clemon

                                        United States District Judge